Receipt number AUSFCC-7072708

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARQUITA RODDY, on Behalf of Herself and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | NO. ___21-1372 C___ |
| V. | § § | |
| THE UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § § | |

### PLAINTIFF'S ORIGINAL CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

1.     This lawsuit is brought by the Named Plaintiff Marquita Roddy, on behalf of herself and all others similarly situated, ("Plaintiff") against the Defendant United States of America ("Defendant").[1]

2.     The Plaintiff and proposed Class Members are current and former employees of the United States Government employed at the United States Postal Service.  Following the outbreak of the COVID-19 Pandemic, the Plaintiff and proposed Class Members from March 13, 2020 through the present have performed work with or in close proximity to objects, surfaces, and/or individuals infected with the novel coronavirus ("COVID-19").[2]  Because the Plaintiffs were not paid the hazardous duty pay differential for exposure to virulent biologicals set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous micro-organisms set forth in in Appendix A to subpart E of Part 532 of

---

[1] In addition to the Named Plaintiff, 4 other individuals have joined this case as Opt-In Plaintiff pursuant to 29 U.S.C. § 216(b).  The 5 Opt-In Plaintiff are Crystal Pierce, Tana Moore, James McAllister, and Thant Zin Oo.

[2] The President of the United States declared COVID-19 a national emergency on March 13, 2020. (https://www.ajmc.com/view/a-timeline-of-covid19-developments-in-2020, last visited May 17, 2021).

Title 5, Code of Federal Regulations, the Defendant has and continues to violate 5 U.S.C. § 5545(d) and 5 U.S.C. § 5343(c)(4).

3.      Plaintiff brings this action for damages and other relief, pursuant to 29 U.S.C. § 216(b); 28 U.S.C. §§ 1346(a)(2), 1491; 5 U.S.C. §§ 5545(d), 5343(c)(4), 5596 (the Back Pay Act), and the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, to remedy the defendant's willful and unlawful violations of law complained of herein.

4.      Plaintiff brings this action as a class action on behalf of the proposed Class Members for damages and other relief, pursuant to 5 U.S.C. § 5545(d), 5 U.S.C. § 5343(c)(4), 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. § 5596.

5.      Plaintiff also brings this action as a collection action on behalf of the proposed Class Members for damages and other relief pursuant to 29 U.S.C. § 216(b).

## SUBJECT MATTER JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiff's claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). *Abbey v U.S.*, 745 F.3d 1363, 1369 (Fed. Cir. 2014).

7.      Venue is proper in this judicial district. *Id.*

## PARTIES AND PERSONAL JURISDICTION

8.      Plaintiff Marquita Roddy is an individual residing in Dayton, Ohio.  Plaintiff has worked for Defendant as a postal service employee and as a mail processing clerk for the United States Postal Service in Dayton, Ohio and in the Washington Township, Ohio. Plaintiff Roddy has been employed by Defendant since October 2018. Her written consent to this action is attached hereto as Exhibit "A."

9.      Opt-In Plaintiff James McAllister is an individual residing in Milwaukie, Oregon. Plaintiff worked for Defendant as a mail processing clerk for the United States Postal Service in

2

Clackamas, Oregon.  Said Plaintiff was employed by Defendant from January 2020 to August 2020.  His written consent to this action is attached hereto as Exhibit "B."

10.     Opt-In Plaintiff Tana Moore is an individual residing in Cleveland, Ohio.  Plaintiff worked for Defendant as a dispatch clerk for the United States Postal Service in Painesville, Ohio.  Said Plaintiff has been employed by Defendant since July 2018.  Her written consent to this action is attached hereto as Exhibit "C."

11.     Opt-In Plaintiff Crystal Pierce is an individual residing in Newark, Delaware.  Plaintiff worked for Defendant as a mail processing clerk for the United States Postal Service in Newcastle, Delaware.  Said Plaintiff was employed by Defendant from April 2020 to January 2021.  Her written consent to this action is attached hereto as Exhibit "D."

12.     Opt-In Plaintiff Thant Zin Oo is an individual residing in Hacienda Heights, California.  Plaintiff worked for Defendant as a mail processing clerk for the United States Postal Service in The City of Industry, California.  Said Plaintiff was employed by Defendant from September 2020 to October 2020.  His written consent to this action is attached hereto as Exhibit "E."

13.     The Rule 23 Class Members are all current and former employees of the United States Postal Service from March 13, 2020 to the present.

14.     The FLSA Class Members are all current and former hourly paid employees of the United States Postal Service from March 13, 2020 to the present.

15.     The Rule 23 Class Members and the FLSA Class Members shall be collectively referred to as the "Class Members."

16.     The Plaintiff and Class Members have been required to perform duties involving unusual physical hardship and hazards within the meaning of 5 U.S.C. §5545(d) and/or have been

required to perform duties involving unusually severe working conditions or unusually severe hazards within the meaning of 5 U.S.C. § 5343(c)(4), and therefore, as detailed below, are entitled to "hazardous duty pay" and/or "environmental differential pay" for each such day.

## COVERAGE

17.  Defendant is an employer under Title 5 of the U.S. Code; specifically, 5 U.S.C. §§ 5102 and 5541.

18.  In addition, Defendant is a "public agency" and an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d). Defendant employs, or has employed, Plaintiff and other employees in similar activities and has its principal place of business in Washington, D.C.

19.  As a public agency, Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1)(c).

20.  At all material times, Plaintiff and the Class Members were/are employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 207.

21.  At all material times, Plaintiff and the Class Members were not exempt under the FLSA by 29 U.S.C. § 213(a) or 29 U.S.C. § 213(b).

22.  Further, at all material times, Defendant has been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

23.  At all material times, Plaintiff and the Class Members have been "employees" within the meaning of Title 5 of the U.S. Code.  Specifically, 5 U.S.C. §§ 2105, 5102, and 5342.

## FACTS

24.  The novel Coronavirus has infected nearly 33,000,000 Americans and caused the deaths of approximately 600,000 Americans. (*See* https://coronavirus.jhu.edu/map.html, last

visited May 17, 2021).   COVID-19 is a highly contagious respiratory infection, producing severe

symptoms that can be fatal.  Common symptoms include the following:

> fever, body ache, dry cough, fatigue, chills, headache, sore throat, loss of appetite, and loss of smell. In some people, COVID-19 causes more severe symptoms like high fever, severe cough, and shortness of breath, which often indicates pneumonia. People with COVID-19 can also experience neurological symptoms, gastrointestinal (GI) symptoms, or both. These may occur with or without respiratory symptoms.
>
> For example, COVID-19 affects brain function in some people. Specific neurological symptoms seen in people with COVID-19 include loss of smell, inability to taste, muscle weakness, tingling or numbness in the hands and feet, dizziness, confusion, delirium, seizures, and stroke.
>
> In addition, some people have gastrointestinal (GI) symptoms, such as loss of appetite, nausea, vomiting, diarrhea, and abdominal pain or discomfort associated with COVID-19. The virus that causes COVID-19 has also been detected in stool, which reinforces the importance of hand washing after every visit to the bathroom and regularly disinfecting bathroom fixtures.

(https://www.health.harvard.edu/diseases-and-conditions/covid-19-basics, last visited May 17,

2021).

      25.    During their work for Defendant, Plaintiff and the Class Members performed work

with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19.  They

were not provided adequate protective equipment and there were insufficient workplace policies

to ensure the safety of the Plaintiff and Class Members.  For instance, Defendant did not provide

sufficient personal protective equipment, such as gloves and hand sanitizer.   Additionally,

Defendant did not implement any safety policies, such as for social distancing.  Defendant also did

not install any safety equipment, such as filters in federal Post Offices to eliminate the risk of the

virus.

      26.    In March 2020, the President declared COVID-19 a national emergency on March

13, 2020.  (*See*  https://www.ajmc.com/view/a-timeline-of-covid19-developments-in-2020,  last

visited May 17, 2021).  Shortly thereafter, California became the "first state to issue a stay-at-home order, mandating all residents to stay at home except to go to an essential job or shop for essential needs." (*Id*.).  Thereafter, states across the country began issuing mandatory stay-at-home orders.

27.      On July 9, 2020, the World Health Organization announced that the "coronavirus can be transmitted through the air after more than 200 scientists sign a letter urging the agency to revise its recommendations. In an updated scientific brief, WHO notes that the virus may linger in the air in crowded indoor spaces and emphasizes that the virus may be spread by asymptomatic individuals." (*Id*.)  By August 2020, COVID-19 became one of the leading causes of death in the United States. (*Id*.)  In September 2020,  a "study conducted at Houston Methodist Hospital finds a more contagious strain of COVID-19 in a large portion of recent patient samples. Investigators analyzed samples from the earliest phase of the pandemic and a more recent infection wave, finding that nearly all strains from the more recent phase had a mutation that allows the virus to bind and infect more cells." (*Id*.)

28.      In light of the dangers of COVID-19 and the fact that the virus is readily transmittable, Plaintiff and the Class Members were forced to perform work with, or in close proximity to, COVID-19 (the virulent biological), including, without limitation, work with or in close proximity to facilities, rooms, offices, workspaces, packages, letters, equipment, objects, surfaces, and/or individuals infected with the novel coronavirus that causes COVID-19.

29.      The Centers for Disease Control and Prevention ("CDC") has determined that COVID-19 meets the definition for "severe acute respiratory syndromes" as set forth in Executive Order 13295, as amended by Executive Orders 13375 and 13674, and, therefore, is a "quarantinable communicable disease." *See* Office of Pers. Mgmt., CPM 2020-05, Coronavirus

Disease 2019 (COVID-19): Additional Guidance (March 7, 2020), available at https://www.chcoc.gov/content/coronavirus-disease-2019-covid-19-additional-guidance, last visited May 17, 2021.

30.    COVID-19 spreads "very easily from person to person"[3] and has been characterized as a pandemic by the World Health Organization ("WHO") and a national emergency by the President of the United States.

31.    COVID-19 can be spread by touching infected objects or surfaces and by breathing in areas where an infected person has coughed or exhaled. As the WHO explains, the "virus can spread from an infected person's mouth or nose in small liquid particles when they cough, sneeze, speak, sing or breathe. These particles range from larger respiratory droplets to smaller aerosols." (https://www.who.int/news-room/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted, last visited May 17, 2021). "People may also become infected by touching surfaces that have been contaminated by the virus." (*Id*.)

32.    According to researchers at the National Institutes of Health, COVID-19 can persist on surfaces for up to three days. (See https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces, last visited May 17, 2021). Specifically,

> The virus that causes coronavirus disease 2019 (COVID-19) is stable for several hours to days in aerosols and on surfaces, according to a new study from National Institutes of Health, CDC, UCLA and Princeton University scientists in The New England Journal of Medicine. The scientists found that severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) was **detectable in aerosols for up to three hours**, up to four hours on copper, **up to 24 hours on cardboard** and **up to two to three days on plastic and stainless steel**.

(*Id*.) (emphasis added).

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Spread, last visited May 17, 2021

33.     Accordingly, contact with an infected object or surface presents a risk of transmission for days after the object or surface becomes infected.

34.     A person who is infected with COVID-19 may not present symptoms immediately. Rather, there is an "incubation period" in which a person is infected but has not begun to present symptoms: "The incubation period for COVID-19 is thought to extend to 14 days." (https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html, last visited May 17, 2021).

35.     An infected individual may spread COVID-19 before he or she begins to present significant symptoms or an infected individual will remain asymptomatic. (*Id*.; *see also* https://www.who.int/news-room/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted, last visited May 17, 2021).

36.     Employees of the United States Postal Service, including the Plaintiff and Class Members, were at particular risk for contacting COVID-19.  Following the outbreak of the COVID-19 Pandemic, the Plaintiff and Class Members were required to work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19.  That is because the "United States Postal Service is designated an essential service for the nation and is an integral part of the federal response to this coronavirus (COVID-19) crisis." (https://about.usps.com/newsroom/covid-19/, last visited May 17, 2021).  The website for the United States Postal Service describes the role of its employees as follows:  "During the COVID-19 outbreak, the Postal Service continues to fulfill its critical mission to bind the nation together. Postal Service employees are working hard for our customers every day, serving as a lifeline for millions of people." (*Id*.)  "We're on the front lines — delivering needed medicines, supplies." (*Id*.)

37.     Unfortunately, Defendant did not adequately protect the Plaintiff and Class Members from the hazards of working with COVID-19.  Indeed, a report issued by the Office of the Inspector General stated that: "As of July 31, 2020, there was at least one employee who either tested positive for COVID-19 or quarantined due to possible exposure to the virus at over 7,000 Postal Service facilities."  (https://www.uspsoig.gov/document/employee-safety-%E2%80%93-postal-service-covid-19-response, last visited May 17, 2021).  **In other words, over 7,000 postal service facilities had workers who contracted COVID-19.**

38.     Consequently, the post offices nationwide have experienced an outbreak of COVID-19 at these facilities.  Thousands of postal workers have been infected as a result of their work for Defendant.

39.     Since start of the COVID-19 Pandemic, Plaintiff and the Class Members have performed (and continue to perform) work with or in close proximity to objects (mail, packages, equipment), surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.  Indeed, as the report from the Office of the Inspector General concluded, Defendant failed to provide safe working conditions for the Plaintiff and Class Members causing the spread of COVID-19 at the postal facilities. (*See* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-259-R21.pdf, last visited May 17, 2021).

40.     The Office of the Inspector General observed that "although the CDC recommended temperature taking for employees in April 2020, the Postal Service did not deploy temperature taking within its facilities nationwide." (https://www.uspsoig.gov/document/employee-safety-%E2%80%93-postal-service-covid-19-response, last visited May 17, 2021).

41.     The Plaintiff and Class Members were at particular risk from COVID-19.  Unlike many U.S. Government employees, the Plaintiff and Class Members cannot work remotely, even during a pandemic. They are required to work day in and day out and were essential workers necessary to deliver medicine and supplies. (https://about.usps.com/newsroom/covid-19/, last visited May 17, 2021).

42.     The work of the Plaintiff and Class Members is crucial and vital to the health and stability of this country.  The Plaintiff and Class Members are responsible for delivering packages, medicine, supplies, and information – all of which is essential during a global pandemic.  As a result of their work, they become in close proximity to individuals, objects, and surfaces infected with COVID-19.  For instance, the letters, mail, and packages sorted by Plaintiff and the Class Members had COVID-19 on their surface.  Similarly, when delivering the letters, mail, and packages in the field, postal workers came into contact with surfaces infected with the virus. Moreover, given the design and layout of the postal facilities, Plaintiff and the Class Members worked with other individuals who were infected with the virus.  Similarly, they touched equipment that was infected with the virus.

43.     Plaintiff and the Class Members worked in enclosed settings with their co-workers. They also came into contact with members of the public on a regular basis who needed the services of the postal facilities.  Indeed, the Plaintiff and Class Members come into close physical proximity with coworkers and members of the public when performing their daily job duties at the postal facilities, such as sorting letters and packages, operating equipment necessary to deliver the letters and packages, and assisting members of the public with the mailing and delivery of their letters and packages.  The Plaintiff and Class Members had direct physical contact with their co-workers and members of the public.

10

44.     The Plaintiff and Class Members had direct physical contact with objects (letters and packages) that came from individuals infected with COVID-19.  The Plaintiff and Class Members also touched surfaces that individuals infected with COVID-19 had touched.

**PLAINTIFF RODDY'S DIRECT EXPOSURE TO COVID-19 AT WORK**

45.     Plaintiff Roddy has worked for Defendant since October 2018.  She first began her employment with Defendant at the post office in The Washington Township in Ohio.  She worked at this location until October 2020.  This location has approximately 300-400 postal workers at a given time.  Plaintiff's job title was PSE – which was an acronym for postal service employee.  Her job duties included handling packages to be delivered, sorting packages, and servicing customers.  During the time that Plaintiff worked at The Washington Township location, the location experienced an outbreak of COVID-19.  She worked with several mail carriers, mail processing clerks, and PSEs who contracted the virus. Therefore, Plaintiff performed work in close proximity to individuals infected with COVID-19.  She also performed work in close proximity to objects and surfaces infected with COVID-19.  She handled and sorted packages that came from members of the public who were infected with COVID-19.  Those packages were touched by Plaintiff as part of her daily duties.  With the exception of a facemask, Plaintiff was not regularly provided any gloves or other personal protective equipment.  When Plaintiff performed her daily job duties she experienced direct exposure to COVID-19 and carried the risk of exposure to her co-workers and from her co-workers.

46.     After leaving The Washington Township location, Plaintiff Roddy began working at the post office in downtown Dayton, Ohio and continues to work at this location.  This location has approximately 200-300 postal workers at a given time.  Plaintiff's job title is mail processing clerk.  Her job duties include working in the automation department to sort mail, loading various

equipment with mail, and assisting with the sorting of packages.  Her schedule was 3 pm to 10:30 pm Wednesday, Thursday, Friday, Saturday, and Sunday.  However, she was required to work mandatory overtime and regularly ended her shift well past 12:30 am.  During the time that Plaintiff has worked at the downtown Dayton location, it experienced an outbreak of COVID-19. Approximately 10-15 of her co-workers contracted COVID-19.  Therefore, Plaintiff performed work in close proximity to individuals infected with COVID-19.  She also performed work in close proximity to objects and surfaces infected with COVID-19.  She handled and sorted packages that came from members of the public who were infected with COVID-19.  Those packages were touched by Plaintiff as part of her daily duties.  With the exception of a facemask, Plaintiff was not regularly provided any gloves or other personal protective equipment. When Plaintiff performed her daily job duties she experienced direct exposure to COVID-19 and carried the risk of exposure to her co-workers and from her co-workers.

47.     The Class Members have a similar work experience as the Plaintiff.  They too performed work in close proximity to individuals infected with COVID-19.  They too performed work in close proximity to objects and surfaces infected with COVID-19.  They also handled and sorted packages that came from members of the public who were infected with COVID-19.  The Class Members were also required to work with, handle, and touch packages as part of their daily duties.  With the exception of a facemask, the Class Members were not regularly provided any gloves or other personal protective equipment. When the Class Members performed their daily job duties, they experienced direct exposure to COVID-19 and carried the risk of exposure to their co-workers and from their co-workers.

48.     The foregoing exposure to areas, objects, surfaces, and/or individuals infected with COVID-19 was not taken into account in the classification of Plaintiff's position.

49.     Defendant has not provided sufficient protective equipment or measures to practically eliminate the hazard of exposure to COVID-19 for the Plaintiff and Class Members.

50.     Plaintiff works in close proximity to COVID-19 and has performed work that involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease within the meaning of subpart E of Part 532 of Title 5, Code of Federal Regulations.

51.     As a result of Plaintiff's performance of her official duties in close proximity to COVID-19 on objects, surfaces, and/or individuals infected with COVID-19, as alleged herein, Plaintiff has been exposed to "virulent biologicals" within the meaning of Subpart I of Part 550 of Title 5, Code of Federal Regulations, and hazardous micro-organisms within the meaning of Subpart E of Part 532 of Title 5, Code of Federal Regulations.

52.     Defendant has not compensated Plaintiff or the Class Members with the hazardous duty pay differential for exposure to virulent biologicals as set forth in Appendix A to Subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential for exposure to hazardous microorganisms set forth in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations. Accordingly, defendant has failed to provide hazardous duty and environmental differential pay to plaintiffs when they work with or in close proximity to COVID-19 on objects. surfaces, and/or individuals infected with COVID-19 as required by 5 U.S.C. § 5545(d) and 5 U.S.C. § 5343(c)(4).

53.     Because Defendant has failed to pay Plaintiff and the Class Members hazardous duty pay and/or environmental pay differentials, Defendant has not included such pay when calculating Plaintiff's and the Class Members' regular rates of pay for purposes of calculating and paying overtime compensation under the FLSA.

## COMPENSATION OWED TO THE PLAINTIFF AND CLASS MEMBERS

54.     Given the risks of COVID-19 identified above, the Plaintiff and Class Members have been denied significant unpaid wages owed to them under the law.

55.     As a result of the Plaintiff's and Class Members' performance of their official duties in close proximity to objects, surfaces, and/or individuals infected with COVID-19, the Plaintiff and Class Members have been exposed to "virulent biologicals" within the meaning of subpart I of Part 550 of Title 5. Code of Federal Regulations and hazardous micro-organisms within the meaning of subpart E of Part 532 of Title 5, Code of Federal Regulations. See also 5 U.S.C. § 5545(d) and 5 U.S.C. § 5343(c)(4)

56.     Defendant has not compensated Plaintiff or the Class Members with hazardous duty pay differential for exposure to virulent biologicals as set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous micro-organisms set forth in Appendix A to subpart E of Part 532 of Title 5. Code of Federal Regulations.

57.     Accordingly, since March 13, 2020, and continuing to this date, Defendant has violated the law by failing to provide hazardous duty and environmental differential pay to the Plaintiff and Class Members when they work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19.  Defendant knew of the requirement to pay hazardous duty pay and environmental differential to the Plaintiff and Class Members because Defendant has made those payments to other federal employees during the pandemic. (*See* https://www.wusa9.com/article/news/verify/federal-employees-eligible-for-hazard-pay-covid-19-pandemic/65-34130a95-7f44-466b-a265-8c935085e7c9, last visited May 17, 2021)

58.     Pursuant to 5 U.S.C. § 5545(d), OPM has issued regulations at 5 C.F.R. §§ 550.901-550.907, which establish a schedule of hazardous duty pay differentials and provide that an employee who qualifies for hazardous duty pay shall be paid the hazardous duty pay differential for each day that the employee is exposed to hazardous duty.

59.     The schedule of hazardous duty pay differentials set forth in Appendix A to Subpart I of Part 550 of Title 5, Code of Federal Regulations, provides that agencies shall pay a twenty five percent (25%) hazard pay differential when employees perform work with or in close proximity to "virulent biologicals," which are defined as "materials of micro-organic nature which when introduced into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection." 5 C.F.R. Pt. 550, Subpt. I, App. A.

60.     OPM has also issued regulations for prevailing rate employees pursuant to 5 U.S.C. § 5343(c)(4), which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

61.     The schedule of environmental pay differentials set forth in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations, provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserums and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" and a four percent (4%) environmental pay differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact

with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury" and 5 C.F.R. Pt. 532, Subpt. E, App. A.

62.    Under this authority, Defendant was required to pay hazardous duty pay and environmental differentials to Plaintiff and the Class Members.

63.    Defendant's decision not to pay hazardous duty pay and environmental differential to the Plaintiff and Class Members is inexplicable.  The National Association of Postal Supervisors has petitioned Congress for help to no avail. (See https://naps.org/Branch/386/NAPS-Works-to-Secure-Hazard-Pay-for-Frontline-Postal-Employees, last visited May 17, 2021).

> NAPS is deeply engaged with the congressional leadership, in conjunction with NAPS House and Senate allies to ensure that frontline postal employees will also be eligible for "hazard pay." NAPS has also been working with postal policy-makers to make sure that the Postal Service has access to personal protective equipment and sanitization products to safeguard its employees from COVID-19.

(*Id.*)

64.    Similarly, nearly one million people have signed a petition seeking hazardous duty pay and environmental differential pay to the Plaintiff and Class Members.  (*See* https://www.postaltimes.com/postalnews/nearly-1-million-petitioners-demand-usps-employees-receive-hazard-pay-amid-coronavirus-pandemic/, last visited May 17, 2021).  Again, these pleas have been ignored.

65.    This lawsuit has been brought to remedy Defendant's illegal behavior.

66.    Under the facts described in this Complaint, Defendant's method of paying Plaintiff and the Class Members in violation of FLSA and the Back Pay Act was willful and was not based on a good faith and reasonable belief that the conduct complied with the law.

## COUNT ONE — HAZARDOUS DUTY PAY

67.     Plaintiff re-alleges and incorporate by reference all preceding paragraphs of this Complaint.

68.     Section 5545(d) of Title 5 of the U.S. Code provides that the OPM shall establish a schedule of pay differentials for duty by federal employees involving unusual physical hardship or hazard. Section 5545(d) further provides that OPM prescribe "such minimum periods as it determines appropriate" during which an employee who performs duty involving physical hardship or hazard is entitled to hazardous duty pay.

69.     Pursuant to Section 5545(d) of Title 5, OPM has issued regulations at 5 C.F.R. §§ 550.901-550.907 pertaining to hazardous duty pay.   The schedule of hazardous duty pay differentials is contained in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations. See 5 C.F.R. § 550.903.  These regulations provide that an employee who qualifies for hazardous duty pay shall be paid hazardous duty pay for each day that the employee is exposed to hazardous duty or physical hardship.  Indeed, Pursuant to 5 C.F.R. § 550.904, federal agencies "shall pay the hazard pay differential listed in appendix A of this subpart to an employee who is assigned to and performs any duty specified in appendix A of this subpart" unless "the hazardous duty or physical hardship has been taken into account in the classification of his or her position[.]"

70.     Exposure to COVID-19 was not taken into account in the classification of the Plaintiff's and Class Members' positions.

71.     The schedule of hazardous duty pay differentials that OPM has established in 5 C.F.R. §§ 550.901-550.907 provides that agencies shall pay hazardous duty pay to employees who are exposed to virulent biologicals, such as COVID-19, to which plaintiffs have been exposed. They further provide that the hazardous duty pay differential which the agency shall pay the

employees equals twenty five percent (25%) of their gross earnings for each day the worker has been required to work in close proximity to COVID-19. When an employee performs any duty for which a hazard pay differential is authorized, the agency must pay the hazard pay differential for all hours that the employee worked on the day on which he or she performed the hazardous duty. 5 C.F.R. § 550.905.

72.   Defendant has failed and continues to fail to pay Plaintiff and the Class Members the twenty five percent (25%) hazardous duty pay differential for each day that they have been exposed to COVID-19 through the performance of their official duties without sufficient protective devices, procedures, and safeguards.

73.   Since at least March 13, 2020 through the present, Plaintiff and the Class Members have performed work with or in close proximity to COVID¬19, including, without limitation, work performed with or in close proximity to facilities, offices, workspaces, equipment, objects, packages, letters, envelopes, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices and with sufficient workplace policies in place to ensure their safety. The United States Postal Service has suffered numerous outbreaks at its facilities and thousands of workers infected with COVID-19.  Indeed, the Office of the Inspector General has been critical of the failure of the United States Postal Service to provide necessary equipment, procedures, and safeguards for postal workers.

74.   Although Plaintiff and the Class Members have been exposed to virulent biologicals, Defendant has failed and refused, and continues to fail and refuse, to pay them the twenty five percent (25%) pay differential for each day that they have been required to work in close proximity to COVID¬19. By failing and refusing to pay Plaintiff and the Class Members a twenty five percent (25%) pay differential on these occasions, and continuing to fail and refuse to

pay Plaintiff and the Class Members for this hazardous duty, Defendant has violated, and is continuing to violate, the provisions of Title 5 relating to hazardous duty pay at 5 U.S.C. § 5545(d).

75.     As a consequence of Defendant's failure and refusal to pay plaintiffs hazardous duty pay at all times material herein, Plaintiff and the Class Members have been unlawfully deprived of hazardous duty pay and other relief for the maximum statutory period allowed under federal law.

76.     As a result of the Defendant's willful and purposeful violations of Title 5, there has become due and owing to each Plaintiff and Class Member various amounts which have not yet been precisely determined. The employment and work records, including each Plaintiff/Class Member's daily assignments are in the exclusive possession, custody and control of Defendant and its public agencies and Plaintiff is unable to state, at this time, the exact amounts owing to each of them. Defendant is in exclusive possession of relevant personnel files, records, and information, including but not limited to Plaintiff's and the Class Members' dates of hire/separation, job descriptions, dates of work, hours of work, schedule, and daily work assignments.  Defendant also retains records reflecting the names of employees who have had COVID-19, when they had COVID-19, and how long they had COVID-19.  Each postal facility has a roster of employees and a schedule.  These records, as well as other evidence in the Defendant's exclusive custody and control, will readily demonstrate Plaintiff's and the Class Members' work in close proximity to the virulent biological COVID-19.  These records will also demonstrate the amounts owed to the Plaintiff and Class Members.

77.     Pursuant to the Back Pay Act, 5 U.S.C. § 5596, Plaintiff and the Class Members are entitled to recover interest on their back pay damages for the Defendant's failure to pay them hazardous duty pay.

78.     Plaintiff and the Class Members are also entitled to recover attorneys' fees and costs under the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

### COUNT TWO – ENVIRONMENTAL DIFFERENTIAL PAY

79.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

80.     Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations regarding wage schedules and rates for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

81.     The schedule of environmental differentials is contained in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations. *See* 5 C.F.R. § 532.511(d).

82.     The schedule of environmental differentials provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" in situations where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserums and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" or a four percent (4%) environmental differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury." 5 C.F.R. Pt. 532, Subpt. E, App. A.

83.     The regulations provide that an employee entitled to an environmental differential shall be paid an amount equal to the percentage rate authorized by the OPM for the category in which the working condition or hazard falls, multiplied by the rate for the second step of WG-10 for the appropriated fund employees and NA-10 for the non-appropriated fund employees on the current regular non-supervisory wage schedule for the wage area for which the differential is payable, counting one-half cent and over as a whole cent. 5 C.F.R. § 532.511(b)(1).

84.     An employee entitled to an environmental differential on the basis of hours in a pay status "shall be paid for all hours in a pay status on the day on which he/she is exposed to the situation." 5 C.F.R. § 532.511(b)(3).

85.     Since at least March 13, 2020 through the present, postal workers paid pursuant to the prevailing rate pay system have performed work with or in close proximity to COVID-19, including, without limitation, work performed with or in close proximity to facilities, offices, workspaces, equipment, objects, packages, letters, envelopes, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices and with sufficient workplace policies in place to ensure their safety.  The United States Postal Service has suffered numerous outbreaks at its facilities and thousands of workers infected with COVID-19.  Indeed, the Office of the Inspector General has been critical of the failure of the United States Postal Service to provide necessary equipment, procedures, and safeguards for postal workers.

86.     Defendant has failed, and continues to fail, to pay postal workers the eight or four percent environmental differential listed in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations for each period when they have been exposed to COVID-1 9 through the performance of their official duties.

87.     By failing to pay the eight or four percent environmental differential for this hazardous duty, Defendant has violated, and is continuing to violate, the provisions of 5 U.S.C. § 5343(c)(4).

88.     As a consequence of Defendant's failure to pay environmental differential pay, postal workers across the country have been unlawfully deprived of environmental differential pay and other relief.

89.     As a result of the Defendant's willful and purposeful violations of Title 5, there has become due and owing to each Plaintiff and Class Member various amounts which have not yet been precisely determined. The employment and work records, including each Plaintiff/Class Member's daily assignments are in the exclusive possession, custody and control of Defendant and its public agencies and Plaintiff is unable to state, at this time, the exact amounts owing to each of them. Defendant is in exclusive possession of relevant personnel files, records, and information, including but not limited to Plaintiff's and the Class Members' dates of hire/separation, job descriptions, dates of work, hours of work, schedule, and daily work assignments.  Defendant also retains records reflecting the names of employees who have had COVID-19, when they had COVID-19, and how long they had COVID-19.  Each postal facility has a roster of employees and a schedule.  These records, as well as other evidence in the Defendant's exclusive custody and control, will readily demonstrate Plaintiff's and the Class Members' work in close proximity to the virulent biological COVID-19.  These records will also demonstrate the amounts owed to the Plaintiff and Class Members.

90.     Pursuant to the Back Pay Act, 5 U.S.C. § 5596, Plaintiff and the Class Members entitled to recover interest on their back pay damages for Defendant's failure to pay them environmental pay differential.

91.     Plaintiff and the Class Members are also entitled to recover attorneys' fees and costs under the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

### COUNT THREE — FAIR LABOR STANDARDS ACT

92.     Plaintiff incorporate all allegations contained in the foregoing paragraphs.

93.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a)) provides that an employer shall pay its employees at a rate no less than time-and-a-half for all hours worked more than forty (40) hours per workweek.

94.     Additionally, section 551.501 of the Code of Federal Regulations, 5 C.F.R. § 551.501, provides that federal agency employers shall compensate their employees at a rate of no less than time-and-a-half for all hours worked more than eight hours per day and/or 40 hours per workweek.

95.     At all times material herein, Plaintiff has been entitled to overtime wages when she worked in excess of 40 hours in a week and/or 8 hours in a day.  Overtime wages are to be paid at one and one-half times the "regular rate" of pay for the employee.

96.     The FLSA broadly defines "regular rate" as the hourly rate *actually paid* to the employee for "all remuneration for employment." 29 U.S.C. § 207(e); *see also Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 42 (1944). That is, all remuneration for employment must be included in the regular rate of pay except for those specifically excluded, such as:

1.   Business expense reimbursements;

2.   Premium payments for overtime;

3.   Contributions to bona fide plans for retirement, life, accident, or health insurance or similar benefits;

4.   Discretionary bonuses; and

5.  Gifts

29. U.S.C. § 207(e).

97.     Hazardous duty pay and the environmental differential must be included in the regular rate of pay when calculated overtime.  Given that Defendant has failed to pay hazardous duty pay or the environmental differential to the Plaintiff and Class Members, Defendant has underpaid them overtime wages.

98.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are paid are applicable to Defendant, Plaintiff, or the Class Members.

99.     Pursuant to 29 U.S.C. § 216(b), the Plaintiff and Class Members are entitled to recover their unpaid overtime wages and liquidated damages in an amount equal to their unpaid wages.

100.    Further, pursuant to the Back Pay Act, 5 U.S.C. § 5596, the Plaintiff and Class Members are entitled to recover interest on the back wages owed to them due to Defendant's failure to pay overtime wages.

101.    The Plaintiff and Class Members are also entitled to recover their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and the Back Pay Act, 5 U.S.C. § 5596.

## COUNT FOUR: DECLARATORY RELIEF

102.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

103.    An actual controversy has arisen and now exists between Plaintiff and the Rule 23 Class Members, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the Parties regarding compensation and hours of work.

104.     Defendant fails to pay hazardous duty pay and environmental differential pay to the Plaintiffs and Rule 23 Class Members.

105.     Plaintiff, on behalf of herself and the Rule 23 Class Members, seek a declaration as to the Parties' respective rights and requests that the Court declare that Defendant's conduct is illegal, as alleged in this Complaint, so that future controversies may be avoided and to direct Defendant to pay the Plaintiffs and Rule 23 Class Members all unpaid wages due and premium payments due during the class period.

### RULE 23 CLASS ACTION ALLEGATIONS

106.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

107.     Plaintiff brings this lawsuit pursuant to Rule 23 (a) and (b) as a class action on behalf of the following class:

> **All current and former employees of the United States Postal Service from March 13, 2020 to the present.**

108.     Although Plaintiff does not know the precise number of members of the proposed Class, Plaintiff believe there are more than 100,000 individuals that fit into the Class.

109.     The members of the Class are so numerous that their individual joinder is impractical.

110.     The identity of the members of the Class is readily discernible from Defendant's records.

111.     Plaintiff and the Rule 23 Class on one hand, and Defendant on the other, have a commonality of interest in the subject matter and remedy sought, namely night shift premiums plus interest, attorneys' fees and the cost of this lawsuit.

112.    Common questions of law and fact exist to all members of the Class. These questions predominate over the questions affecting individual class members. These common legal and factual questions include, but are not limited, to the following:

a.    Whether Plaintiff and the Rule 23 Class Members performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19;

b.    Whether Plaintiff and the Rule 23 Class Members were paid hazardous duty pay or environmental differential pay;

c.    Whether the job classifications of the Plaintiff and the Rule 23 Class Members took into consideration that they would work with or in close proximity to virulent biologicals;

d.    When Defendant has provided adequate equipment, procedures, and safeguards to protect Plaintiff and the Rule 23 Class Members.

113.    These and other common questions of law and fact, which are common to the members of the Class, predominate over any individual questions affecting only individual members of the Class.

114.    Plaintiff's claims are typical of the claims of the Class because Plaintiff was not paid the wages in accordance with federal law just as the Rule 23 Class Members were not paid the wages in accordance with federal law.

115.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained competent counsel, highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

116.    The class action under federal law is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Rule 23 Class Members pursuant to Rule 23(b)(1) – (3). The injuries suffered by each individual class member are relatively small in

26

comparison to the burden and expense of individual prosecution of a complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually redress the wrongs done to them; even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents the possibility for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex, legal and factual issues of the case. By contrast, the class action presents far fewer logistical issues and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court.

117.    Also, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Specifically. the Defendant has and continues to require members of the Rule 23 Class to perform work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices, procedures, or safeguards and the Defendant has failed, and continues to fail to pay members of the Rule 23 Class hazardous duty pay or environmental differential pay.

118.    Additionally. class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Rule 23 Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Rule 23 Class Members have been damaged and are entitled to recovery as a result of the Defendant's common practice of failing

to compensate them for their performance of work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19.

## COLLECTIVE ACTION ALLEGATIONS

119.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

120.    Plaintiff has actual knowledge that the FLSA Class Members have also been denied overtime pay at the rate of time and one half their regular rates of pay for hours worked over 8 hours per day and/or forty (40) hours in a workweek because of Defendant's policy of failing to pay hazardous duty pay or environmental differential pay.

121.    Plaintiff's knowledge is based on her personal work experience and through communications with other workers.

122.    Other workers similarly situated to Plaintiff throughout the United States were also not paid full overtime wages due to Defendant's illegal policy.

123.    Although Defendant permitted and/or required the FLSA Class Members to work more than 8 hours per day and 40 hours per week, Defendant denied them full compensation for their overtime hours.

124.    Plaintiff worked on average 40-50 hours per week.

125.    The FLSA Class Members are not exempt from receiving overtime pay.

126.    The FLSA Class Members are similar to the Plaintiff in terms of relevant job duties, pay structure, work conditions, and the denial of overtime pay.

127.    Defendant's failure to pay overtime compensation at the rates required by the FLSA and section 551.501 results from generally applicable policies or practices and does not depend on the personal circumstances of any potential Plaintiff.

128.   The experiences of the Plaintiff, with respect to their pay, hours, and duties are typical of the experiences of the FLSA Class Members.

129.   The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

130.   Although the exact amount of damages may vary among the FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all FLSA Class Members.

131.   As such, the class of similarly situated Plaintiff for the FLSA Class is properly defined as follows:

> **All current and former hourly paid employees of the United States Postal Service from March 13, 2020 to the present.**

## PRAYER

132.   For these reasons, Plaintiff pray for:

a.   Any order declaring that Defendant's failure to pay the Plaintiff and the Class Members for their pre-shift and post-shift work violated federal law;

b.   An order certifying this case as a class action under Rule 23 and as a collective action under the FLSA;

c.   A judgment against Defendant awarding Plaintiff and the Class Members all their unpaid wages, overtime compensation, and liquidated damages;

d.   An order awarding attorneys' fees, costs, and expenses;

e.   Pre- and post-judgment interest at the highest applicable rates; and

f.   Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:   /s/ Don J. Foty
      Don J. Foty
      Hodges & Foty, LLP
      dfoty@hftrialfirm.com
      Texas Bar No. 24050022
      David W. Hodges
      Hodges & Foty, LLP
      dhodges@hftrialfirm.com
      Texas Bar No. 00796765
      4409 Montrose Blvd., Suite 200
      Houston, TX 77006
      Telephone: (713) 523-0001
      Facsimile: (713) 523-1116

      And

      Anthony J. Lazzaro
      Ohio Bar No. 0077962
      anthony@lazzarolawfirm.com
      Chastity L. Christy
      Ohio Bar No. 0076977
      chastity@lazzarolawfirm.com
      Lori M. Griffin
      Ohio Bar No. 0085241
      lori@lazzarolawfirm.com
      The Lazzaro Law Firm, LLC
      anthony@lazzarolawfirm.com
      The Heritage Building, Suite 250
      34555 Chagrin Boulevard
      Moreland Hills, Ohio 44022
      Phone:  216-696-5000
      Facsimile:  216-696-7005

      ATTORNEYS FOR PLAINTIFF AND CLASS
      MEMBERS